United States Courts
Southern District of Texas
FILED

OCT 07 2019

David J. Bradley, Clerk of Court

IN UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD B. STEPP, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| Sergeant B. S. Boswell, | § | JURY DEMANDED |
| Sergeant C. L. #99, | § | |
| Sergeant S. A., | § | |
| Police Officer James Hauke, | § | |
| Police Officer Steven James Laughlin, | § | |
| Police Officer M. York, | § | |
| Police Officer Liam Stewart, | § | |
| Police Officer Edmund Christian | § | |
| (in their individual capacities), and | § | |
| City of Bryan, Texas. | § | |
| *Defendants.* | | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT SITTING IN THE SOUTHERN DISTRICT OF TEXAS:

Plaintiff RICHARD B. STEPP (hereafter "Plaintiff") respectfully comes before this Honorable Court bringing this Original Complaint and would respectfully show as follows:

### I.   **INTRODUCTION**

1. This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, § 1988, the Fourth and Fourteenth Amendments to the United States Constitution.

2. Plaintiff brings these claims against Sergeant B. S. Boswell ("Boswell"), Sergeant C. L. #99, Sergeant S. A., Police Officer James Hauke ("Hauke"), Police Officer Steven James Laughlin ("Laughlin"), Police Officer M. York ("York"), Police Officer Liam Stewart ("Stewart"), Police Officer Edmund Christian ("Christian"), and the City of Bryan, Texas ("the City"),

3. These claims arise from two incidents dated June 7, 2017 and July 19, 2017, in which officers of the Bryan Police Department ("Bryan PD"), acting under color of state law,

intentionally and willfully subjected Plaintiff to, inter alia, false imprisonment and malicious prosecution.

4. Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorney's fees, and such other and further relief as this Court deems just and proper.

## II. DEMAND FOR JURY TRIAL

5. Plaintiff respectfully demands a trial by jury.

## III. PARTIES

6. Plaintiff, RICHARD B. STEPP, individually, is and was at all times relevant hereto a resident of Brazos County, Texas.

7. Defendants, SERGEANT B. S. BOSWELL, SERGEANT C. L. #99, and SERGEANT S. A. were, at all times here relevant, police officers of the Bryan PD, and as such were acting in the capacity of an agent, servant and employee of the City of Bryan. On information and belief, at all times relevant hereto, SERGEANT B. S. BOSWELL, SERGEANT C. L. #99, and SERGEANT S. A., were supervisory officers and were under the command of the Bryan PD. Defendants SERGEANT B. S. BOSWELL, SERGEANT C. L. #99, and SERGEANT S. A., are being sued in their individual capacity and may be served at their place of work at 303 E 29th Street, Bryan, Texas 77803 or wherever they are found.

8. Defendants, Police Officer JAMES HAUKE, Police Officer STEVEN JAMES LAUGHLIN, Police Officer M. YORK, Police Officer LIAM STEWART, and Police Officer EDMUND CHRISTIAN were, at all times here relevant, police officers of the Bryan PD, and as such were acting in the capacity of agents, servants and employees of the City. On information and belief, at all times relevant hereto, Police Officer JAMES HAUKE, Police Officer STEVEN JAMES LAUGHLIN, Police Officer M. YORK, Police Officer LIAM STEWART, and Police Officer EDMUND CHRISTIAN were under the command of the Bryan PD. Police Officer JAMES HAUKE, Police Officer STEVEN JAMES LAUGHLIN, Police Officer M. YORK, Police Officer LIAM STEWART, and Police Officer EDMUND CHRISTIAN are sued in their individual

|   |   |
|---|---|
|   | capacity and may be served with process at their place of work at 303 E 29th Street, Bryan, Texas 77803 or wherever they are found. |
| 9. | THE CITY OF BRYAN (or "the City") is a municipal corporation organized under the laws of the State of Texas. At all times relevant hereto, Defendant City, acting through the Bryan Police Department (or "Bryan PD"), was responsible for the policy, practice, supervision, implementation, and conduct of all Bryan PD matters and was responsible for the appointment, training, supervision, discipline, retention and conduct of all Bryan PD personnel. In addition, at all times here relevant Defendant City was responsible for enforcing the rules of the Bryan PD, and for ensuring that the Bryan PD personnel obey the laws of the United States and the State of Texas. Defendant City is being sued and may be served through the City Manager, Kean Register, via the City Manager's Office at 300 Texas Avenue, Bryan, Texas 77803. |
| 10. | At all times here mentioned, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulation, policies, customs and usages of the City and State of Texas. |

## IV. JURISDICTION AND VENUE

11. Plaintiff invokes the jurisdiction of this Court pursuant to 42 U.S.C. § 1983
12. as this cause arises under the laws of the United States providing for the protection of Civil Rights, and may be enforced against the Defendant, herein named, through the Fourth and Fourteenth Amendments to the United States Constitution.
13. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331. Venue is proper under 28 U.S.C. § 1391(b) since Plaintiff resides within, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within, the Southern District of Texas, Houston Division.

## V. FACTUAL ALLEGATIONS

<u>Hauke – June 7, 2017</u>

14. In 1998, Hauke was suspended from the Bryan PD "indefinitely" for violating several Bryan PD General Orders, which included lies to his superiors and the failure to follow the law.

3

15. By information and belief, in 2008, Hauke was hired back as an employee of the City via the Bryan PD, despite his history of law and policy violations.

16. Hauke's internal Bryan PD personnel file contains disciplinary information that Bryan PD will not, at this time, provide to Plaintiff.

17. On June 7, 2017, Hauke, an on-duty Bryan PD police officer, was working traffic enforcement in the 1000 block of the North Earl Rudder Freeway.

18. At approximately 0115 hours, Hauke observed Plaintiff traveling 88 miles per hour in a 70 mile per hour zone.

19. Hauke initiated a traffic stop and approached the sole occupant and owner of the vehicle, the Plaintiff.

20. Hauke was issued and wearing a functioning body worn camera, which captured the events that took place during the traffic stop.

21. Neither probable cause nor any other lawful reason existed to search the vehicle.

22. Hauke asked Plaintiff for consent to search the vehicle and Plaintiff repeatedly declined to give consent. See Exhibit A at 07:30-08:50, attached.

23. The specific details of the exchange are as follows:
    a. Hauke: "You don't have anything illegal in your car? Do you mind if I look?"
    b. Plaintiff: "I don't mind if you look. You can look at the ignition switch right here." *Id.* at 07:20.
    c. Hauke: "You don't mind if I look, right?"
    d. Plaintiff: "I don't mind if you look, you can look in there." *Id.* at 07:30.
        i. Hauke then has Plaintiff stand with York, another Bryan PD officer on scene.
        ii. When Hauke begins sifting through the console area, Plaintiff stops Hauke. *Id.* at 07:50.
    e. Plaintiff: "Sir, what are you doing now? If you want to look, look." *Id.*
    f. Hauke: "You said I could look in your vehicle." *Id.* at 08:00.
    g. Plaintiff: "If you want to look in, look in, I have no problem with you looking in my vehicle." *Id.* at 08:05.
    h. Hauke: "Can I search your vehicle or not?" *Id.* at 08:10.

4

      i. Plaintiff: "You can search whatever you want, but I'm not giving you permission to search it. You can look in the vehicle." *Id.*

      j. Hauke: "Are you giving me permission to search it?" *Id.* at 08:15.

      k. Plaintiff: "I'm not giving you permission to do anything, sir. If you want to do it, you can open the door and look. You see the steering wheel." *Id.*

      l. Hauke: "I can either search your vehicle or not." *Id.* at 08:30.

      m. Plaintiff: "You can *look* in the vehicle, sir. You can *look* in the vehicle. You see the steering wheel. I had problems with the steering wheel." *Id.*

          i. Hauke then pretends to touch on the steering wheel and for the few seconds Plaintiff is distracted with York, Hauke digs his hands into the space between the center console and passenger seat, pulls out a cigarette box, opens it, and pulls out its contents.

          ii. Plaintiff was then immediately placed under arrest.

24. In his sworn probable cause statement, Hauke wrote that Plaintiff consented to a search of the vehicle.

25. In his sworn probable cause statement, Hauke wrote that he has been an officer with Bryan PD for 21 years and 4 months, since 1996, if including his "indefinite" suspension period.

26. Separately, in his incident report, Hauke wrote that Plaintiff consented to a search of the vehicle.

27. Hauke, and not York, completed York's supplemental report as if he was York.

28. York, the second officer on scene, did not stop Hauke from searching, arresting, or prosecuting Plaintiff, nor did he report Hauke's conduct to a superior officer.

29. Hauke's sergeant, Boswell, a superior police officer with the Bryan PD who had also previously been under investigation by the Bryan PD for untruths and failure to follow the law, signed off on Hauke's sworn statement, despite it containing facial untruths and despite Hauke's history of untruths and failure to follow the law while employed with Bryan PD.

30. On October 5, 2017, the Plaintiff was indicted for Possession of a Controlled Substance.

31. The grand jury based their probable cause determination on the false information within the sworn probable cause statement and incident report.

32. On July 8, 2019, a hearing on Plaintiff's Motion to Suppress Physical Evidence obtained during this traffic stop was held in the 361st District Court of Brazos County.

33. During this hearing, Hauke admitted that Plaintiff told him he did not have permission to search anything.

34. On July 8, 2019, the 361st District Court of Brazos County granted suppression motion based on Hauke's failure to obtain Plaintiff's consent to search the vehicle.

35. The Brazos County District Attorney's Office indicated it would appeal.

36. On July 21, 2019, the 361st District Court of Brazos County assigned a $5,000 personal recognizance bond on this case in preparation for an appeal.

37. On August 21, 2019, this cause was dismissed on the Brazos County District Attorney's Office's motion, due to the suppression of illegally obtained evidence.

38. Plaintiff was confined for 720 days in the Brazos County Jail due to the prosecution of this cause.

39. Hauke remains a police officer with the Bryan PD.

40. On information and belief, no formal or informal reprimand, training, or additional supervision has been provided to or required of Hauke by Bryan PD or the City as a result of this incident.

<u>Laughlin – July 19, 2017</u>

41. Laughlin's internal Bryan PD personnel file contains discipline letters that Bryan PD will not, at this time, provide to Plaintiff.

42. On July 19, 2017, at approximately 0421 hours, Laughlin conducted a traffic stop in the 1600 block of W. Villa Maria Rd. on Plaintiff's vehicle for an equipment violation.

43. Laughlin and two other Bryan PD officers on scene, Stewart and Christian, were issued and wearing functioning body worn cameras, which captured the events that took place during the traffic stop. See Exhibits B, C, and D, attached.

44. After obtaining Plaintiff's identification and confirming that he had a warrant out of the Bryan PD and a warrant out of Pardon and Paroles, the Plaintiff was immediately placed under arrest in handcuffs, personally searched, and physically put in the back seat of Laughlin's patrol vehicle. Exhibit B at 10:55; Exhibit C at 01:10; Exhibit D at 01:00.

6

45. Laughlin's patrol vehicle was parked approximately 50 feet away from Plaintiff's empty vehicle.
46. Laughlin is asked by Stewart if they have probable cause to search the vehicle. Exhibit C at 05:15.
47. Laughlin muted the audio on his own body worn camera, motioned to the second officer to wait, and mouthed, "No, we do not." *Id.*
48. All officers on scene circled the vehicle for many minutes, attempting to find something in plain view, but there was nothing. Exhibit B at 07:25 and 17:44; Exhibit C at 06:10-08:00; Exhibit D at 01:00-1:15, 02:45-03:00, and 07:20-08:00.
49. Laughlin even stuck his whole body into the vehicle at one point to illegally search for items, even prior to his alleged request for consent. Exhibit B at 13:15.
50. Neither probable cause nor any other lawful reason existed to search the vehicle.
51. Laughlin eventually asked Plaintiff if the air compressor in the vehicle was stolen and the Plaintiff responded that it was not. *Id.* at 17:10.
52. Laughlin then asked Plaintiff if he minded if Laughlin checked it out to see whether it was stolen. *Id.* at 17:25.
53. Plaintiff responded, "it is not stolen or nothing like that, sir." *Id.* at 17:30.
54. Laughlin responds by immediately walking over to the other officers and asks for one of them to stand with Plaintiff to ensure Plaintiff does not "withdraw consent." Exhibit B at 17:45.
55. Either Christian or Stewart asks Laughlin, "Oh, he consented?" but Laughlin does not respond. *Id.* at 17:50.
56. Laughlin and Stewart search the entirety of the vehicle, and began in an area completely unrelated to the location of the air compressor. Exhibit B at 17:50; Exhibit C at 08:00.
57. It took about four minutes of searching to locate any contraband. Exhibit B at 17:50-23:00; Exhibit C at 08:00-12:00.
58. Plaintiff's vehicle was ultimately released to a friend and not the subject of a tow inventory.
59. In Stewart's supplemental report to the incident, he stated "Laughlin informed [Plaintiff] consented to a search of his vehicle so I began searching his vehicle."

7

60. Neither Stewart nor Christian, the additional officers on scene, stopped Laughlin from searching Plaintiff's vehicle or prosecuting Plaintiff, nor did they report Laughlin's conduct to a superior officer.

61. In his sworn probable cause statement, Laughlin wrote that Plaintiff consented to a search of the vehicle.

62. Separately, in his incident report, Laughlin also wrote that Plaintiff consented to a search of the vehicle.

63. Two of Laughlin's sergeants, Sergeant C. L. #99, and Sergeant S. A., superior police officers with the Bryan PD, signed off on Laughlin's sworn statements, despite their containing untruths.

64. On October 5, 2017, Plaintiff was indicted for Manufacture and Delivery of a Controlled Substance.

65. The grand jury based their probable cause determination on the false information within the sworn probable cause statement and incident report.

66. On July 1, 2019, the Assistant Brazos County District Attorney assigned to the case stated she believed the search in this case was unlawful.

67. On July 10, 2019, the Assistant Brazos County District Attorney assigned to the case stated that her office would not dismiss this case until an appeal on Hauke's case "came back down."

68. Although the 361st District Court of Brazos County assigned a $5,000 personal recognizance bond for Plaintiff's release on Hauke's case, Plaintiff was given no bond on this case.

69. The failure to dismiss this cause, despite it being a known unlawful search, was done in order to prevent Plaintiff's release from custody.

70. On July 29, 2019, the 361st District Court of Brazos County dismissed this case on motion of the Brazos County District Attorney's Office.

71. In its motion to dismiss, the Brazos County District Attorney's Office wrote that the reason for their motion to dismiss was "Unlawful Search."

72. Plaintiff was confined for 804 days in the Brazos County Jail due to the prosecution of this cause.

73. Laughlin remains a police officer with the Bryan PD.

74. On information and belief, no formal or informal reprimand, training, or additional supervision has been provided to or required of Laughlin by Bryan PD or the City.

General

75. Hauke and Laughlin acted with the intent to deceive and/or with reckless disregard as to the absence of probable cause, on which they knew pretrial detention, indictments, and prosecutions were predicated.

76. Bryan PD's General Order on its body worn video states that it expects that their use will "…strengthen police accountability…and provide for…improved protection against…misconduct or racial profiling while protecting civil liberties and privacy interests."

77. Bryan PD's General Order on its body worn video further states that "[s]upervisors shall ensure employees utilizing the…body worn video recording system adhere to established procedures, guidelines and policies."

78. Bryan PD either failed to follow its policy when it did not ensure Hauke and Laughlin were adhering to established procedure, guidelines, and policies, which was plainly available via its body worn videos, or it did review the videos and did nothing about it.

79. Boswell, Sergeant C. L. #99, and Sergeant S. A., three sergeants and supervising officers, at separate times, failed to properly review the conduct of their subordinate officers, particularly where there were patent untruths and even more particularly where those officers had significant disciplinary history.

80. Boswell, Sergeant C. L. #99, and Sergeant S. A.'s acts and omissions directly caused Plaintiff's false imprisonment and malicious prosecution.

81. The City via Bryan PD's acts and omissions in allowing its officers to repeatedly stop vehicles and fabricate facts giving rise to probable cause in its sworn and unsworn statements amounts to a failure to adequately train or supervise its officers.

82. The City allowed officers to remain in a supervisory capacity who themselves have been under investigation for untruths and failure to follow the law amounts to a policy, practice or custom of failing to adequately train or supervise its officers, which has resulted in unconstitutional acts.

83. The additional presence of officers on separate scenes on separate days supporting separate officers committing unconstitutional acts, is evidence of the City's pre-existing policy, practice or custom, of failing to report the wrongdoings of fellow officers.
84. It is the custom of the City and Bryan PD to allow pretrial detention, indictment and prosecution in cases lacking probable cause.
85. Hauke and Laughlin, two Bryan PD police officers, patrolling separately on two separate days only one month apart, acted nearly identically and in accordance with Bryan PD's custom, policy or practice of unconstitutional acts, due to lack of training and supervision, when Defendants falsely imprisoned and maliciously prosecuted Plaintiff.

## VI.   CLAIMS
### FIRST CAUSE OF ACTION (False Imprisonment)

86. Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.
87. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 U.S.C. § 1983.
88. Defendants' conduct deprived Plaintiff of his right to be free of unreasonable search and seizure, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived Plaintiff of his due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.
89. As described more fully above, all of the Defendants, while acting individually and jointly, and as well as under color of law, caused Plaintiff to be falsely imprisoned in violation of his constitutional rights.
90. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.
91. The misconduct described in this Count was undertaken pursuant to the policy, practice and custom of the City via the Bryan PD.
92. Plaintiff has been damaged as a result of Defendants' wrongful acts.

### SECOND CAUSE OF ACTION (Malicious Prosecution)

93. Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

94. Defendants have deprived Plaintiff of his civil, constitutional and statutory rights under color of law and are liable to Plaintiff under 42 U.S.C. § 1983.

95. Defendants' conduct deprived Plaintiff of his right to be free of unreasonable search and seizure, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived Plaintiff of his due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

96. Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously resulting in injury, and all such proceedings were terminated in Plaintiff's favor.

97. The Defendants accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements with the intent to deceive, and/or with reckless disregard, and to exert influence to institute and continue the judicial proceedings.

98. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

99. The misconduct described in this Count was undertaken pursuant to the policy, practice and custom of the City via the Bryan PD.

100. Plaintiff has been damaged as a result of Defendants' wrongful acts.

### THIRD CAUSE OF ACTION (Municipal and Supervisory Liability)

101. Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

102. The City is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents and servants, in that, after learning of their employees' violation of Plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing

subordinates who caused the unlawful condition or event. The City has been alerted to the actions of their officers, inter alia, false statements, false imprisonment and malicious prosecution by its police officers, but has nevertheless exhibited deliberate indifference to such false statements, false imprisonment and malicious prosecution; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

103. The aforesaid event was not an isolated incident. The City has been made aware via lawsuits, complaints and judicial rulings suppressing evidence as a matter of law, that a number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony. The City has allowed policies and practices that allow the aforementioned to persist.

104. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

### **FOURTH CAUSE OF ACTION (Negligent Hiring & Retention)**

105. Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

106. Defendant City, through the Bryan PD, owed a duty of care to Plaintiff to prevent the loss of liberty and mental abuse sustained by Plaintiff.

107. Defendant City, through the Bryan PD, owed a duty of care to Plaintiff because under the same or similar circumstances, a reasonable, prudent and careful person should have anticipated injury to Plaintiff or those in a position similar to Plaintiff as a result of this conduct.

108. Upon information and belief, Defendant officers were incompetent and unfit for their positions.

109. Upon information and belief, Defendant City knew or should have known through exercise of reasonable diligence that the officer Defendants had credibility issues, failed to follow the law, significant disciplinary history, and had previously acted unlawfully in imprisoning and prosecuting civilians.

110. Because of the Defendant City's negligent hiring and retention of Defendant officers, Plaintiff incurred damages described herein.

### **FIFTH CAUSE OF ACTION (Supervisory Liability)**

111. Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

112. Defendants Boswell, Sergeant C. L. #99, and Sergeant S. A. owed a duty of care to Plaintiff to prevent the loss of liberty and mental abuse sustained by Plaintiff.

113. Defendants Boswell, Sergeant C. L. #99, and Sergeant S. A. owed a duty of care to Plaintiff because under the same or similar circumstances, a reasonable, prudent and careful person should have anticipated injury to Plaintiff or those in a position similar to Plaintiff as a result of this conduct.

114. Upon information and belief, Defendant officers were incompetent and unfit for their positions.

115. Upon information and belief, Defendants Boswell, Sergeant C. L. #99, and Sergeant S. A. knew or should have known through exercise of reasonable diligence that their subordinate officer Defendants had credibility issues, significant disciplinary history, and had previously acted unlawfully in imprisoning and prosecuting civilians.

116. Because of Defendant Boswell, Sergeant C. L. #99, and Sergeant S. A.'s failure to properly supervise and train its subordinates, Plaintiff incurred damages described herein.

### **SIXTH CAUSE OF ACTION (Failure to Intervene)**

117. Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

118. Defendants York, Stewart, and Christian owed a duty of care to Plaintiff to prevent the loss of liberty and mental abuse sustained by Plaintiff.

119. Defendants York, Stewart, and Christian owed a duty of care to Plaintiff because under the same or similar circumstances, a reasonable, prudent and careful person should have anticipated injury to Plaintiff or those in a position similar to Plaintiff as a result of this conduct.

120. In the manner described above, during the constitutional violations described above, Defendants York, Stewart, and Christian stood by without intervening to prevent the misconduct.

121. As a result of the Defendant officers' failure to intervene to prevent the violation of

Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

122. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

123. The misconduct described in this Count was pursuant to Bryan's policy and practice in the manner described in the preceding paragraphs.

### VII. DAMAGES

124. Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

125. Plaintiff seeks all damages allowed by law as a result of the aforementioned conduct forming the basis for each of Plaintiff's causes of action. Plaintiff's request damages within jurisdictional limits of the Court.

126. Upon trial of this cause, it will be shown that, in serving over two years in jail, Plaintiff lost his home, his property, and his job. Plaintiff must now attempt to pick up the pieces and start over again with nothing. Additionally, the emotional pain and suffering caused by two years in custody has been substantial. During his false imprisonment and malicious prosecution, Plaintiff was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to share holidays, birthdays, funerals and other life events with loved ones, and the fundamental freedom to live one's life as an autonomous human being.

127. The damages sustained by Plaintiff were proximately caused by the Defendants as set forth herein.

128. Plaintiff respectfully requests the Court and a Jury determine the amount of the loss Plaintiff has incurred in the past and will incur in the future.

129. There are certain elements of damages provided by law that Plaintiffs are entitled to have the Jury in this case separately consider determining the sum of money for each element that will fairly and reasonably compensate the Plaintiff.

130. Plaintiff is further entitled to reasonable attorney's fees and costs in pursuing this matter,

and any other reasonable and necessary damages as allowed under 42 U.S.C. § 1988.

## VIII. SPOLIATION ISTRUCTION

131. Plaintiff requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom.

132. Failure to maintain such items shall constitute "spoliation" of the evidence.

## IX. REQUEST FOR RELIEF

133. Plaintiff seeks judgment in his favor and against Defendants, jointly and severally, ordering Defendants to pay all damages recoverable under law to Plaintiff, including the following:

    a. Compensatory damages
    b. Loss of enjoyment of life
    c. Emotional pain
    d. Mental anguish
    e. Loss of the society, association, and companionship of friends and family
    f. Loss of the parent-child relationship
    g. Deprivation of legal rights
    h. Loss of earning capacity
    i. Punitive damages
    j. Pre-judgment interest
    k. Post-judgment interest
    l. Costs of suit and fees as allowable by law
    m. Attorney's fees under 42 U.S.C. § 1988
    n. Expert fees under 42 U.S.C. § 1988
    o. Any other such relief as is deemed just and proper

## X. PRAYER

134. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants

be summoned to appear and answer herein, and that upon a final hearing of this cause, that judgment be entered for the Plaintiff and against Defendants for all damages requested herein, together with prejudgment and post-judgment interest at a maximum rate allowed by law, attorney's fees, costs of court, and such other further relief to which Plaintiff may possibly be entitled at law or in equity. Punish each individual Defendant, and deter others from engaging in similar conduct;

135. Plaintiff asserts that the false imprisonment and malicious prosecution of Plaintiff was the result of a government actor, Boswell, Sergeant C. L. #99, Sergeant S. A., Hauke, Laughlin, York, Stewart, Christian, and the City, who individually and collectively caused the harm suffered and was the result of the Defendants' conduct motivated by evil motive or intent or done recklessly or with callous deliberate indifference to the federally protected rights of Plaintiff, and hereby entitle Plaintiff to punitive and exemplary damages.

136. Equitable relief, including, without limitation, that Defendants be made to apologize and such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

Respectfully submitted,

MORGAN ROGERS LAW PLLC

by: /s/Morgan Rogers
Morgan Rogers (*pro hac vice*)
State Bar No. 24080177
*Pro Hac Vice*
1415 North Loop West #300-19
Houston, TX 77008
Telephone: 713-588-0270
Facsimile: 832-916-6494
Email: morganrogerslaw@gmail.com
**ATTORNEY FOR PLAINTIFF**